**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 97-10645, No. 97-10772

HOGAN SYSTEMS, INC.,

Plaintiff-Appellant,

versus

CYBRESOURCE INT'L.,INC.,  DAVID
BOEHR, DOUGLAS  PERADOWSKI,
JAMES HELMS AND MICHAEL GREENE,                          Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Texas

October 30, 1998

Before DUHÉ, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Plaintiff-Appellant appeals the district court's grant of summary judgment in favor of

defendants-appellees on its claims of copyright infringement, misappropriation of trade secrets and

breach of contract.  Additionally, Plaintiff-Appellant appeals the district court's award of costs and

attorney's fees to defendants-appellees.  For the reasons set forth below, we AFFIRM both of these

decisions by the district court.

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff-Appellant Hogan Systems, Inc. ("Hogan") is the developer and owner of copyrighted data processing software used by major banks worldwide. Such software—including the source code, object code and related documentation for Hogan's Umbrella System and the other programs at issue in this case (the "Software")—is stipulated to be a trade secret. Hogan owns the copyright in the Software. Hogan maintains that since the early 1980's, it has required its employees to sign a confidentiality agreement—agreeing not to disclose or use the Software and related secrets without Hogan's express written consent. Hogan requires its licensees to maintain the confidentiality of the Software and related trade secrets as well. Hogan does not sell the Software to third parties, but instead licenses it to its customers. Norwest is one of the many major banks that is one of Hogan's licensees.

Hogan entered into an initial license (the "Initial License") with Norwest in 1980, permitting Norwest's use of the Software. Hogan suggests that in the Initial License Agreement, Norwest stipulated to the trade secret status of the Software, and agreed not to distribute or disclose the Software to third parties. The Initial License was non-assignable.

In 1987, Hogan entered into a marketing agreement with IBM whereby IBM assumed responsibility for marketing the Software in North America. As part of that arrangement, Hogan, Norwest, and IBM signed an agreement effective in 1988 (the "1988 Agreement"). The 1988 Agreement applied the terms of a pre-existing 1983 IBM-Norwest license agreement (the "IBM-Norwest License") to the Software. The 1988 Agreement provides that the IBM-Norwest License terms prevail over the Initial License to the extent of any conflict. After the conclusion of the IBM-Norwest marketing arrangement in 1993, IBM and Hogan entered into another agreement, in which

2

Hogan reaffirmed the validity of IBM's various sublicense agreements, including those with Norwest. Together, these license agreements shall be referred to as the "License Agreements."

The four individual defendants/appellees, David Boehr, Douglas Paradowski, James Helms, and Michael Greene (together the "Individual Defendants"), are former employees of Hogan who terminated their employment on various dates between September 29, 1995 and July 15, 1996. During their employment at Hogan each of the four signed substantially similar confidentiality agreements (the "Confidentiality Agreements") with Hogan, containing identical commitments concerning the restricted use and non-disclosure of Hogan's trade secrets and confidential materials. Each of the Confidentiality Agreements indicates that the employee's general skill, knowledge, and experience is not encompassed by the confidentiality obligation.

Following his departure from Hogan, Greene formed Cybresource International, Inc. ("Cybresource") an independent service organization ("ISO") at which Boehr, Paradowski, and Helms later became employees. In anticipation of a symbiotic relationship with Hogan, Greene signed a Professional Services Agreement (the "Cybresource-Hogan Agreement") with Hogan dated October 18, 1995. In that Agreement, Hogan alleges that Cybresource stipulates to the trade secret status of the Software and related processes, technical mastery, and ideas of Hogan. Hogan insists that Cybresource pledged that its representatives would keep Hogan's proprietary information secret, and that they would not copy or otherwise use the information except as expressly authorized by Hogan in the performance of the Cybresource-Hogan Agreement. These promises and stipulations expressly survive any termination of the Cybresource-Hogan Agreement.

Several months after the execution of the Cybresource-Hogan Agreement, Greene entered into a contract with Norwest (for Cybresource to provide software support services to Norwest),

3

without the consent required by the Cybresource-Hogan Agreement. That agreement (the "Cybresource-Norwest Agreement"), dated March 18, 1996 is the focus of the litigation. Hogan suggests that the Cybresource-Norwest Agreement (1) characterizes Cybresource and its employees as independent contractors; (2) contemplates possible access by Cybresource to Software owned by Hogan and other third parties; and (3) mandates that for Cybresource to perform services on third-party software as the Agreement outlines, consents, and licenses from that third party (in this case, Hogan) must be obtained. Hogan maintains, however, that such consents and licenses were never obtained from it.

Cybresource insists that the applicable Norwest License Agreements provide that the licensee (Norwest) does not violate its confidentiality obligations if it provides or otherwise makes the Software available to non-employees (here, the Individual Defendants) of the licensee during the periods such persons are on the premises of the licensee for purposes related to authorized use of the Software. Cybresource further suggests that Norwest is authorized under its license agreements to tailor Hogan products through modifications, customizations, and enhancements to meet Norwest's specific business needs. Further, Cybresource contends that Paradowski and Boehr first acquired experience with Hogan Software not while employed by Hogan, but by two of its other licensees. Cybresource notes that familiarity with Hogan's Software is gained through other methods than by employment at Hogan. Finally, Cybresource indicates that many other ISO and individuals in the computer marketplace are performing substantially similar work to that being performed by the Individual Defendants at Norwest.

Hogan filed this action on July 25, 1996, seeking injunctive and monetary relief for copyright infringement, contract breach, trade secret misappropriation, unfair competition, tortious interference,

4

and misappropriation. Hogan contends that Cybresource and the Individual Defendants are infringing upon its copyrights and misappropriating its trade secrets by utilizing its copyrighted Software and related trade secrets to perform support services for the benefit of Norwest. Hogan also alleges that the Individual Defendants violated the provisions of their Confidentiality Agreements with Hogan by conducting these same activities. Hogan also asserts claims against Greene individually, based on his apparent wrongful solicitation of Hogan's former employees.

On December 12, 1996, after conducting an evidentiary hearing, the district court denied Hogan's application for preliminary injunction. On June 2, 1997, the district court granted Cybresource's motion for summary judgment and entered the final judgment which Hogan challenges in this appeal. On July 15, 1997, the district court granted Cybresource's request for an award of costs and attorney's fees under 17 U.S.C. § 505.

### DISCUSSION

### I. Summary Judgment

The district court granted summary judgement against all of Hogan's claims. Hogan appeals the lower court's action on two sets of these claims, the first being copyright infringement, and the second being misappropriation of trade secrets and a breach of contract. We review a district court's grant of summary judgment de novo. See, e.g., Hirras v. National Railroad Passenger Corp., 95 F.3d 396, 399 (5th Cir. 1996). The party seeking summary judgment, who in this case is Cybresource, bears the burden of demonstrating that there is an absence of evidence to support the non-movant's case, who in this case is Hogan. Id. The summary judgment evidence must be viewed in the light most favorable to Hogan, with all permissible inferences drawn in favor of Hogan as non-movant. Id.

5

## A.      Copyright Infringement

### 1.       *Interpretation of the Hogan-Norwest License*

The district court rejected Hogan's copyright infringement claim because it found that Cybresource's activities are sheltered under Norwest's license rights.  We agree. The Hogan-Norwest License authorizes third-party contractors to provide consulting services on Hogan-produced Software.  It provides that Norwest will not make the licensed software available to anyone:

> except to [Norwest's] employees or [Hogan's] employees or to other persons during the period such other persons are on [Norwest's] premises for purposes specifically relating to [Norwest's] authorized use of the licensed program.

Describing  this clause as the "Incidental Exposure Clause,"[1] Hogan offers two interpretations of its language. In either Norwest would not be permitted to bring independent software contractors to work directly on the Software.  It argued before the district court that the "other persons" in this clause referred to janitorial or temporary clerical staff. The district court rejected this argument.  Hogan now argues that the clause is meant to insulate Norwest from liability for incidentally disclosing screen displays generated by the Software to independent hardware maintenance personnel and was never meant to apply to third-party consultants such as the Individual Defendants.

---

[1]Hogan describes this language as the "Incidental Exposure Clause," apparently to support its argument that this language only permits Norwest to allow access to the Software to those whose work only incidentally would involve the Software, such as janitors,  temporary clerical staff., and independent hardware maintenance personnel.  Cybresource disputes this characterization, particularly the word "incidental" which does not appear in the clause, but for the sake of convenience adopts this label.  We do the same.

We find neither of these interpretations persuasive. Such persons would not be on Norwest's premises for purposes specifically related to Norwest's use of the Software. Like the district court, we instead find the language clearly and unambiguously allows Norwest to bring other persons, meaning non-Hogan and non-Norwest employees, onto its premises to work directly on the Software. Boehr, Paradowski, and Helms are clearly "other persons" who are on Norwest's premises for purposes specifically relating to Norwest's authorized use of the Software. We thus adopt the district court's interpretation of the Incidental Exposure Clause.

Hogan submits that the district court's reading conflicts with other portions of the License Agreements in which Norwest's right to use the Software is deemed non-transferable. Hogan suggests that allowing the Individual Defendants to work on the Software for Norwest constitutes a transfer of license rights in violation of the Norwest License Agreements. This argument is without merit. As the district court pointed out, "[t]here is no issue of assignment or transfer since all of the work being done inures to the benefit of Norwest."

Hogan also contends that our interpretation of the Incidental Exposure Clause is inconsistent with a clause in the Initial License which states that Norwest "shall use reasonable efforts to confine knowledge and use of the licensed Systems only to its employees who require such knowledge and use in the ordinary course and scope of their employment . . . ." As Hogan concedes, however, the Initial License was modified and superceded to the extent of inconsistences by the IBM/Norwest License. We find that the Incidental Exposure Clause does conflict with the language of the Initial License because the former specifically allows Software access to employees and "other persons . . . on [Norwest's] premises." As such, the language of the Incidental Exposure Clause prevails.

7

In sum, if Hogan means to exclude independent software contractors, it should state this intent in the Incidental Exposure Clause. As the language is written now, however, it expressly permits Norwest to bring Cybresource onto its premises to work as an independent software contractor upon Hogan's Software.

### 2.   *No Third Party Beneficiary Status*

Hogan also attacks the district court's decision on the ground that there is a strong presumption against conferring third party beneficiary status under Texas law and federal copyright law. Underlying this claim is the premise that the district court implicitly held that Cybresource was a third-party beneficiary to the Hogan-Norwest License Agreement. We disagree. The district court did not make any such finding. As Cybresource correctly points out, if the district court had conferred upon it third-party beneficiary rights as Hogan claims, it would have to possess independent contract rights. The district court, however, specifically declined to hold that such was the case, finding that the language of the Cybresource-Norwest Agreement referred to Cybresource as a mere contractor to Norwest. We agree that Cybresource is not a third-party beneficiary, and thus dispose of Hogan's argument to the contrary.

### 3.   *No Authorization*

Hogan suggests that regardless of our reading of the Incidental Exposure Clause, the Cybresource-Norwest Agreement imposes a duty on Cybresource to obtain the necessary license rights from Hogan before providing software services to Norwest. As Cybresource observes, however, Hogan points to no language in that Agreement which imposes such a duty; the closest language we can find requires Cybresource to obtain Norwest's prior consent before disclosing to

8

others any confidential information disclosed to Cybresource during the course of their relationship. We thus dismiss Hogan's argument as without support.

### 4. *Scope of Incidental Exposure Clause*

#### a. On-Site Use, Copying, and Adapting of Hogan's Software

In the alternative, Hogan argues that even if we decide the Incidental Exposure Clause allows Cybresource access to its copyrighted material, Cybresource's actions extend beyond what is permitted under the Incidental Exposure Clause. In particular, Hogan observes that the Incidental Exposure Clause is prefaced with the statement that Norwest may only "provide or otherwise make available" the Software to third-party software consultants. According to this claim, that language does not include the rights to use, copy, or adapt the Software – which is exactly what Cybresource is doing. As such, Hogan urges the Court to bar Cybresource from engaging in these acts.

The district court rejected this limited interpretation of the Licensing Agreements. After observing that the Licensing Agreements permit Norwest to do the acts complained of,[2] the court concluded that "[w]hat Norwest could itself do under the License, Norwest may use a contractor to do. In other words, while they are engaged in consulting services on behalf of Norwest, Defendant's activities are 'sheltered under' Norwest's license rights." We agree. While copyright licenses are to be construed narrowly, nothing in the phrase "otherwise make available" supports a limited reading of the Incidental Exposure Clause. The language Hogan cites is expansive and does not contain the restrictions Hogan suggests it has built into it.

---

[2]There is one exception to this, which is Hogan's claim that Cybresource is remotely accessing the Software from beyond Norwest's premises. For further discussion of this claim, see Section I.B.1.

b.      Remote Access to Hogan's Software

Hogan avers that there is still a genuine issue of material fact relating to what specific acts were committed by the Individual Defendants and whether such acts could have been conducted lawfully by Norwest.  Importantly, the Incidental Exposure Clause only allows on-premise access to Hogan's Software.  Hogan posits that the summary judgment record indicates that the Individual Defendants had improper off-site access to the Software and that Helms regularly worked on the Software from an off-site location.  Surmising that off-site access necessitates copying and removing the Software from Norwest's premises, Hogan alleges this was an act of copyright infringement.  Further, notes Hogan, the deposition testimony of Boehr and Greene indicates that Cybresource employees have access to, view, display, and write programs that interface with Hogan's source code, and that these employees alter or modify Hogan's source code and object code.

Cybresource replies that the remote access Hogan complains of is simply remote viewing, not unlike pulling up a case in Westlaw.  Indeed, Cybresource argues that it never removed the Software from any Norwest terminal, but merely displayed it from Norwest's mainframe.  Cybresource reiterates the argument it made to the district court, which found it convincing: there is no summary judgment evidence indicating that such use constitutes copying under federal copyright law.  We agree.  Hogan presents scant evidence in support of its claim that a genuine issue of material fact remains.  "To prevail on a claim of copyright infringement, a plaintiff must prove ownership of the copyright and copying by the alleged infringer."  <u>Miller v. Universal City Studios</u>, 650 F.2d 1365, 1375 (5th Cir. 1981).  Hogan has not demonstrated that the copying of which it complains has actually occurred.  Hogan has not illustrated that the Individual

10

Defendant's access to its Software differs substantially from routine access to any computer software program. We thus agree with the district court that Hogan has not provided sufficient summary judgment evidence to establish a genuine issue of material fact for trial.

## B.      Trade Secrets

Hogan also appeals the district court's decision to grant summary judgment upon Hogan's misappropriation of trade secrets claim and its breach of contract claim. The district court's decision was based upon its finding that the information Hogan complained about was not a trade secret, but rather was "general knowledge, skill, and experience" that the Individual Defendants garnered as a result of their former employment with Hogan, and which their Confidentiality Agreements with Hogan recognized as not being a trade secret. On appeal, Hogan submits that the summary judgment evidence proves that the Individual Defendants have acquired specialized knowledge about the process and structure of the Software that they are now exploiting to their own commercial advantage.

In order for information to be a trade secret, it must not be generally known or readily ascertainable by independent investigation. See, e.g., Rugen v. Interactive Business Systems, Inc., 864 S.W.2d 548, 552 (Tex.App. -- Dallas 1993, no writ). Here, Hogan stipulated to the fact that many individuals in the field obtain comparable abilities and expertise without ever being employed by Hogan. We thus disagree with Hogan's argument and affirm the district court's decision.

## II.  Costs and Attorneys' Fees

11

The district court awarded Cybresource's fees under the theory that a prevailing party in a copyright infringement action should be awarded its costs and fees.  Hogan makes two arguments in its appeal of this award: first, that the district court applied the incorrect legal standard under Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994), in exercising its discretion concerning the cost and fee award; and second, that the district court abused its discretion in making this award to Cybresource. The first issue, being a question of law, we review de novo, see Elvis Presley Enterprises v. Capsce, 141 F.3d 188, 196 (5th Cir. 1998),  whereas the second issue we review under an abuse of discretion standard.  See McGaughey v. Twentieth Century Fox Television, 12 F.3d 62, 65 (5th Cir. 1994).

**A.      The McGaughey Rule after Fogerty**

In making its award, the district court cited both the Supreme Court's decision in Fogerty and our decision in McGaughey.    In Fogerty, the Court rejected the "British Rule" which mandates the award of attorney's fees.  Fogerty, 510 U.S. at 533.  In McGaughey, 12 F.3d at 65, we observed that "[a]lthough attorney's fees are awarded in the trial court's discretion [in copyright cases], they are the rule rather than the exception and should be awarded routinely." Hogan argues that this Fifth Circuit practice of routinely awarding attorney's fees in copyright cases under 17 U.S.C. § 505 had been overruled by Fogerty v. Fantasy, and that the district court erroneously applied the wrong legal standard when assessing costs and attorneys' fees against it.

We disagree, instead holding that the case law of the Fifth Circuit's is in accord with the Supreme Court's rule in Fogerty..   Hogan would have this court believe that the Fifth Circuit's "discretionary but routinely awarded" McGaughey standard for attorney's fees is the same as the

12

British Rule and thus has been rejected explicitly by the Supreme Court. It is clear that this is not the case. The language of Fogerty clearly allows for judicial discretion in determining whether attorney's fees should be awarded. So does the McGaughey rule. We thus hold that the district court properly considered McGaughey when conducting its Fogerty analysis of whether to assess costs and attorneys fees against Hogan.

**B.    Application of Fogerty**

Hogan finally asserts that the district court committed reversible error when it did not adequately explain why it awarded costs and attorney's fees. See Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 581 (5th Cir. 1980) (holding that a district judge must explain the findings and reasons upon which an award of attorney's fees is based). Hogan supports this claim by noting the district court expressly bypassed considering the factors set forth in Lieb v. Topstone Industries, Inc., 788 F.2d 151 (3rd Cir. 1986), which the Fogerty Court specifically took note of, and instead used Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) in its analysis. Hogan contends that the Johnson factors are insufficient in this context, as they apply only to the district court's analysis of the proper amount of attorney's fees to award. Johnson, Hogan suggests, has absolutely no bearing on the sole issue presented here, which is whether to make the award in the first instance. Hogan argues that because the court did not use solely the Lieb factors in rendering its decision, it abused its discretion. Hogan also contends that because the district court did not more fully explain its reasoning as to why to award Cybresource costs and attorneys' fees, we should reverse the award as an abuse of discretion.

13

We cannot agree. <u>Fogerty</u> does not require lower courts to exclusively apply <u>Lieb</u> factors; the Court said quite the opposite, in fact, by observing that courts may be guided by other considerations. <u>See Fogerty</u>, 510 U.S. at 535 n.19. Thus the district court did not err when it considered <u>Johnson</u>. Further, the court's failure to make specific findings was not a dereliction of duty as there were sufficient grounds supporting the district court's exercise of its discretion to award attorneys' fees. The district court could have in its discretion decided that Hogan's underlying claim was motivated merely by its desire to dominate the software market. Thus, the district court did not abuse its discretion in awarding costs and attorneys' fees to Cybresource.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grants of summary judgement against Hogan and its award of costs and attorney's fees to Cybresource.

14